Filed 12/27/22  P. v. Thimbrel CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B317779 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA032307) |
| v. | |
| SEAN THIMBREL, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant Sean Thimbrel appeals from an order denying his petition for resentencing pursuant to Penal Code section 1172.6.[1]  We affirm.

# II. BACKGROUND

A.    *Underlying Conviction*

On January 14, 1991, at around 5:30 p.m., defendant borrowed a Monte Carlo in exchange for rock cocaine about half a mile from Olympic Boulevard and La Brea Avenue.  (*People v. Larranaga, et al.* (Apr. 19, 1993, B060628) [nonpub. opn.] (*Larranaga*).)  Defendant was alone at the time he borrowed the car and told the car owner that he needed it to pick up his girlfriend.  (*Ibid.*)

Two hours later, Anthony Stephenson and Kerry O'Neal were driving westbound on Olympic Boulevard in Stephenson's Mustang.  (*Larranaga, supra*, B060628.)  Neither man was a gang member.  (*Ibid.*)  As they approached Olympic and Sycamore, O'Neal noticed defendant's car traveling faster than they were.  (*Ibid.*)  The Monte Carlo initially maneuvered as though to turn left, but instead drove behind the Mustang.  (*Ibid.*)  At a red light on La Brea Avenue, the Monte Carlo pulled

---

[1]    Further statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)  We will refer to the statute by its current section number only.

into the left turn lane next to the Mustang.  (*Ibid*.)  The Monte Carlo's closeness caught O'Neal's attention.  (*Ibid*.)

O'Neal exchanged a glance with Stephenson.  (*Larranaga, supra*, B060628.)  O'Neal looked again at the Monte Carlo and saw the front seat passenger, Jerome Larranaga, hanging out of the window, holding a gun with both hands, and pointing it at the Mustang.  (*Ibid*.)  Stephenson and O'Neal ducked when they saw the gun.  (*Ibid*.)  O'Neal heard two quick shots, and after a pause, a third shot.  (*Ibid*.)

O'Neal waited a second before sitting up.  (*Larranaga, supra*, B060628.)  Stephenson was lying down with his face on O'Neal's lap.  (*Ibid*.)  The Mustang drifted into the intersection but O'Neal, who was in the passenger seat, was able to stop the car.  (*Ibid*.)  Stephenson was unconscious, had a faint heartbeat, and had been shot in the face.  (*Ibid*.)  O'Neal asked two people to call the police.  (*Ibid*.)  Stephenson died of a gunshot wound to the head.  (*Ibid*.)  He also had a gunshot wound to the left shoulder. (*Ibid*.)

The police arrived at 7:45 p.m., and paramedics treated Stephenson in the Mustang.  (*Larranaga, supra*, B060628.)  The police searched the Mustang and found no weapons.  (*Ibid*.) There was a bullet hole in the driver's door.  (*Ibid*.)

A Los Angeles Police Department officer was on duty near Olympic and La Brea between 7:30 and 7:40 p.m. on January 14, 1991.  (*Larranaga, supra*, B060628.)  The officer heard two gunshots in rapid succession, followed by a third gunshot.  (*Ibid*.) He then saw the Monte Carlo screech around the corner from westbound Olympic to southbound La Brea.  (*Ibid*.)  The officer pursued the Monte Carlo, which approached speeds of 50 to 60 miles per hour in a residential neighborhood.  (*Ibid*.)  A police

helicopter also joined in the pursuit. (*Ibid*.) The Monte Carlo continued to flee until it reached Pico Boulevard. (*Ibid*.) After traveling five to six blocks on Pico, the Monte Carlo stopped. (*Ibid*.) Both defendant, who had been driving the Monte Carlo, and Larranga, who was in the passenger seat, were dressed in blue. (*Ibid*.) The two men surrendered to the police. (*Ibid*.)

Larranaga and defendant were members of the Schoolyard Crips, a criminal street gang whose gang color was blue. (*Larranaga*, *supra*, B060628.) The Schoolyard Crips were enemies of the Mansfield Hustler Crips. (*Ibid*.) A Schoolyard Crip had been murdered shortly before the shooting here, in what police believed was a gang-related shooting. (*Ibid*.) The Mansfield Hustler Crips were known to drive Mustangs with a similar appearance as Stephenson's. (*Ibid*.) The shooting occurred in Mansfield Hustlers' territory. (*Ibid*.)

A detective spoke with Larranaga and defendant on the night of their arrest. (*Larranaga*, *supra*, B060628.) Larranaga asked the detective what charges were pending against him and the detective responded that the two could talk about it later. (*Ibid*.) Larranaga then said, "'Is the dude dead, yet?'" to which the detective responded, "'Not yet.'" (*Ibid*.)

The detective later testified as a gang expert, opining that gang members would steal or trade narcotics in order to obtain cars to use in drive-by shootings. (*Larranaga*, *supra*, B060628.) He added that gang members participated in drive-by shootings with other gang members for purposes of gang recognition. (*Ibid*.) When two members participated, one could serve as a witness for the other. (*Ibid*.) In addition, one could act as a driver and the other as a shooter, making it easier to commit a drive-by shooting. (*Ibid*.) The detective had never known a

driver in an inter-gang drive-by shooting to be ignorant of what was about to happen. (*Ibid.*) Gang members were aware of rival gang territories and therefore would know what would happen when gang members drove into a rival gang's neighborhood. (*Ibid.*)

On May 10, 1991, a jury convicted defendant of the first degree murder of Stephenson (count 1), the attempted premeditated murder of O'Neal (count 2), and shooting at an occupied vehicle (count 3). (*Larranaga, supra,* B060628.) The jury found true that a principal was armed with a firearm. (*Ibid.*) The trial court sentenced defendant to a term of 26 years, 4 months to life. (*Ibid.*) On April 19, 1993, this court modified defendant's sentence by staying the four-month term for the firearm enhancement, but otherwise affirmed the judgment. (*Ibid.*)

B.      *Section 1172.6 Petition*

On April 4, 2019, defendant filed a petition for resentencing pursuant to section 1172.6. On June 4, 2019, the trial court appointed counsel to represent defendant.

On August 12, 2019, the District Attorney filed an opposition to the petition.

On March 23, 2021, the trial court issued an order to show cause and set the matter for an evidentiary hearing.

On January 7, 2022, defense counsel filed a supplemental brief in which he objected to "the factual rendition from the appellate decision."

5

C.    *Evidentiary Hearing*

On January 12, 2022, the trial court conducted the section 1172.6, subdivision (d)(3) evidentiary hearing.  Neither party introduced new or additional evidence.  The court explained that it would consider the appellate opinion in *Larranaga, supra,* B060628, the clerk's and reporter's transcripts from trial, and the filings pertaining to the petition.  The court overruled defendant's objection to the use of the gang expert's testimony at trial.

Following argument by counsel, the trial court stated that it found "beyond a reasonable doubt that [defendant] is guilty of count 1 as an aider and abettor."  It continued, "This court finds there is evidence to prove [defendant] guilty beyond a reasonable doubt that he committed the crime with malice aforethought."  The court made certain findings of fact that, in the court's view, demonstrated defendant acted with the intent to kill and with implied malice.  It added, "Further, there is evidence to prove [defendant] guilty beyond a reasonable doubt as to second degree implied malice murder as well."

As to count two, the trial court stated, "the jurors had a panoply of choices as to what . . . defendant was guilty of.  They found he was guilty of first degree attempted murder.  The court believes and finds that the record of conviction demonstrates that there is evidence beyond a reasonable doubt that [defendant] directly aided and abetted in the attempted murder of [O'Neal]. [D]efendant had the intent to kill, not only . . . [Stephenson], but also . . . [O'Neal], and, accordingly, the court finds that [defendant] was convicted of first degree attempted murder under

6

current law."  The court then stated that it denied defendant's petition and also later issued a written decision to that effect.

Defendant timely appealed.

## III.  DISCUSSION

A.    *Section 1172.6*

Section 1172.6 "creates a procedure for convicted murderers [and attempted murderers] who could not be convicted under the law as amended to retroactively seek relief."  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (§ 1172.6, subd. (c).)  Within 60 days of issuance of the order to show cause, the trial court shall hold an evidentiary hearing "to determine whether the petitioner is entitled to relief."  (*Id.*, subds. (d)(1) & (d)(3).)

"[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless

the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

B.	*Reliance on Prior Appellate Opinion*

Defendant argues that the trial court erred by relying upon the factual summary of the case set forth in our prior appellate opinion.  According to defendant, the Legislature, by specifying that a trial court could "consider the procedural history of the case recited in any prior appellate opinion" (§ 1172.6, subd. (d)(3)), implied that the factual recitation from the appellate opinion was not admissible for purposes of a section 1172.6 hearing.  We will assume without deciding that the court erred by relying upon the factual recitation in the appellate opinion.  (See *People v. Clements* (2022) 75 Cal.App.5th 276, 292 [stating in dicta that section 1172.6's language limiting use of prior appellate opinions "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing"].)

We thus consider whether the assumed error was harmless under a *Watson*[2] standard of review.  (See *Lewis*, *supra*, 11 Cal.5th at p. 973.)  Here, the trial court not only relied upon the appellate opinion's factual recitation in reaching its ruling, but also considered the clerk's and the reporter's transcript from the trial and made its own factual findings.  Further, as defendant concedes, there is nothing that is "wrong or improper" about the

---

2	*People v. Watson* (1956) 46 Cal.2d 818.

appellate opinion's description of the trial evidence. On this record, we conclude that defendant has not met his burden of demonstrating prejudice. (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 293.)

## C.     *Failure to Reduce Count 1 to Second Degree Murder*

Defendant next argues that the trial court, having found that he was also guilty of second degree implied malice murder, should have reduced his conviction in count 1 from first to second degree murder. We review this issue de novo. (*Lewis*, *supra*, 11 Cal.5th at p. 961.)

As an initial matter, defendant's contention ignores that the trial court expressly found, beyond a reasonable doubt, that defendant was guilty of first degree murder and only made its finding regarding second degree murder as an alternative ruling. Moreover, section 1172.6 provides no mechanism for a trial court to *reduce* a murder conviction. Rather, "[i]f the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Id.*, subd. (d)(3); see also *id.*, subd. (e) ["The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged"].)[3]

---

[3]     We have denied defendant's writ petition in which he contended that his conviction for first degree murder in count 1 should be reduced to second degree murder pursuant to *People v.*

D.    *Trial Court's Duty at Evidentiary Hearing*

Finally, defendant contends that the trial court erred by failing to perform its statutory duty during the evidentiary hearing.  We disagree.

According to defendant, the record is not clear as to whether the jury convicted him as a direct aider and abettor or under a natural and probable consequences theory.  Defendant's observation, however, is not relevant to whether the trial court erred during the evidentiary hearing.  It is only relevant to whether defendant made a prima facie case for relief under section 1172.6, and the trial court correctly concluded that he had.

Defendant also argues that the trial court failed to act as an independent factfinder during the section 1172.6 evidentiary hearing.  (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)  Defendant cites to portions of the clerk's and reporter's transcript in which the court appears to suggest that defendant *was*, meaning at the time of the criminal trial, convicted of first degree murder and attempted premeditated murder under current law.[4]

---

*Chiu* (2014) 59 Cal.4th 155, 166.  (See *In re Thimbrel* (B321150) [nonpub. order].)

[4]    Defendant specifically cites two portions of the written order in which the court wrote "[t]his court finds that [defendant] was convicted of first and second-degree murder under current law" and "[t]his court finds that [defendant] was convicted of first[]degree attempted murder under current law . . . ."  Defendant also cites the reporter's transcript of the evidentiary hearing, at which the court stated, "[T]he jurors had a panoply of

10

We disagree with defendant's characterization of the record. The record amply demonstrates that the court acted as an independent factfinder during the evidentiary hearing. As noted, the court specifically stated that it relied upon the clerk's and reporter's transcripts of the trial proceedings when reaching its decision. Further, the court stated numerous times that it found defendant guilty of murder beyond a reasonable doubt and made specific factual findings that supported its ruling. (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["[W]e apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law'"].) The court therefore did not err by denying defendant's section 1172.6 motion.

---

choices . . . [and] the court finds that [defendant] was convicted of first degree attempted murder under current law."

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:



RUBIN, P. J.



MOOR, J.